## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| APRIL L. LANDRETH, | ) | CASE NO. 7:05CV5012 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| vs. | ) | AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on the denial, initially and on reconsideration, of the Plaintiff's disability insurance ("disability") benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383.  The Court has carefully considered the record (Filing No. 10) and the parties' briefs (Filing Nos. 16, 17).

## PROCEDURAL BACKGROUND

The Plaintiff, April L. Landreth, filed her initial applications for Disability and SSI benefits on July 7, 2003.  (Tr. 64-66, 298-300.)  The claims were denied initially (Tr. 29-30, 33-37) and on reconsideration (Tr. 31-21, 41-45), an administrative hearing was held before Administrative Law Judge ("ALJ") Ronald D. Lahners on July 9, 2004 (Tr. 316-346). On December 20, 2004, the ALJ issued a decision finding that Landreth was not "disabled" within the meaning of the Act and therefore is not eligible for either disability or SSI benefits.  (Tr. 23.) On May 3, 2005, after considering additional evidence (Tr. 313-315), the Appeals Council denied Bartlett's request for review.  (Tr. 5-8.) Landreth now seeks judicial review of the ALJ's determination as the final decision of the Defendant, the Commissioner of the Social Security Administration ("SSA").  (Filing No. 1.)

Landreth claims that the ALJ's decision was incorrect because the ALJ failed to: 1) find Landreth's testimony credible; 2) appropriately weigh the opinion of Landreth's treating physician; 3) consider Landreth's impairments in combination; and 4) pose an appropriate hypothetical.[1]

Upon careful review of the record, the parties' briefs and the law, the Court concludes that the ALJ's decision denying benefits is supported by substantial evidence on the record as a whole.  Therefore, the Court affirms the Commissioner's decision.

## FACTUAL BACKGROUND

Landreth is now forty-three years old.  (Tr. 64.)  Her occupational experience primarily includes work as a restaurant cook, and also includes work as a waitress, convenience store clerk, and phlebotomist. (Tr. 103.)  Since October 31, 2002, Landreth has not engaged in any substantial gainful employment.  (Tr. 320-21.)

### Landreth's Testimony

At the hearing, Landreth testified that she was 5'6" tall and weighed 256 pounds. (Tr. 320.)  Since October 31, 2002, Landreth decided that she was unable to work because of "a lot of digestive problems."  (Tr. 320-21.)  However, she did work "sporadically" until February 5, 2003.  (Tr. 321.)  Since February of 2003, Landreth has received income from Aid to Dependent Children ("ADC") and unemployment compensation.   Her monthly income from ADC is $293.00. Landreth had one year of college in 1993, and she recently

---

[1]These issues are paraphrased from the issues listed initially in Landreth's brief. (Filing No. 16, at 3-4.)  The Court finds it difficult to determine the precise nature of the issues raised, however, because the brief primarily consists of lengthy quoted portions from other cases without discussion or application to Landreth's case.

took a Quick Books class.[2]  (*Id.*)  Primarily, Landreth worked as a cook, cashier and phlebotomist, and between October 31, 2002, and February 5, 2003, she worked as a clerical worker in a janitorial firm answering telephones, scheduling, typing contracts, and doing computer work.  (Tr. 322.)  As a cashier and phlebotomist, Landreth occasionally lifted up to 20 pounds and was on her feet most of the time.  (Tr. 322-23.)  As a cook, she occasionally lifted up to 50 pounds and was primarily on her feet.  (Tr. 323.)  Her clerical position allowed her to remain seated most of the time and did not involve any lifting.

Landreth characterized her major problem preventing her from working as her digestive problem.  (*Id.*) Landreth stated that she becomes nauseated whenever she eats and suffers from reflux, heartburn, abdominal bloating, cramping and diarrhea.  She stated that she has been diagnosed with irritable bowel syndrome and the provided remedies have not helped.  (Tr. 323-24.)  Also, Landreth testified that she was diagnosed with Hepatitis C, and her digestive problems and Hepatitis aggravate each other. Landreth stated that her symptoms from Hepatitis are fever, headaches and nausea.  She also said that her treatment for Hepatitis C was stopped because she was not responding  to the treatment.   (Tr. 324.)  Landreth testified that Dr. Gosnell treats her for her digestive problems and Dr. Goff was treating her Hepatitis C.  (Tr. 325.) Landreth testified that she takes Flexeril only when she has muscle spasms in her back, Zantac, and Tylenol 3 for her back pain and headaches.  (Tr. 325-26.)

Landreth stated that her position with the cleaning company was terminated due to absenteeism.  Landreth said that her absences totaled between three and five days

---

[2]"Quick Books" is an accounting software program.

3

monthly and were caused by her "digestive problem."  (Tr. 326.)        Landreth testified that

when she experiences symptoms of irritable bowel syndrome ("IBS") she goes to the

bathroom and stays there up to twenty minutes "once an hour," and "[s]ometimes six times

a day."  (Tr. 327.)  Landreth stated that she suffered from IBS on and off whenever she

ate, and she said that IBS sometimes triggers symptoms of hepatitis.  (Tr. 327.) Landreth

stated that she also suffered from nausea, and sometimes vomiting, caused either by her

IBS or Hepatitis C.  (Tr. 327-28.) Landreth also described having fatigue.

Landreth stated that in 1999 she had a diskectomy, which alleviated her symptoms

for a few years.[3]  (Tr. 328-29.) Landreth experiences back spasms when she is physically

inactive. Landreth was fired from her janitorial job.  Afterwards she applied for seven jobs,

but her applications did not result in any job offers.  (Tr. 329.) Landreth stated in her

applications that she suffered from health problems.  (Tr. 330.)

Landreth testified that she cannot lift more than twenty pounds, and she cannot walk

more than two or three blocks without back pain.  She tries to relieve the back pain with a

TENS unit and by taking Flexeril.  (Tr. 330.) Landreth testified that she experiences pain

or discomfort from bending, stooping, sitting for too long, standing more than twenty

minutes, kneeling, squatting, and reaching for items that weigh at least ten pounds.  (Tr.

330-32.)

Landreth described her daily activities.  At the time of the hearing, she was home

schooling her seventeen-year-old son.  (Tr. 332.)  She goes to bed at 10:00 p.m. and gets

---

[3]A diskectomy is a surgical procedure during which a fragment of a herniated
disc causing pressure against one's spinal cord or nerves is removed.  Jonathan Clad,
M.D., *Diskectomy,* Oct. 15, 2005,
http://orthopedics.about.com/cs/herniateddisk/a/ruptureddisk_3.htm.

up at 8:00 a.m.  She testified that she gets up at least every two hours to go to the bathroom and "just to move." (Tr. 333.)  She microwaves her food.  (Tr. 333.)  She stated that she eats every other day and that she feels "pretty good" and that her chronic nausea and diarrhea are lessened when she goes without food.  (Tr. 334-35.)  Landreth testified that she cannot tolerate dairy foods, caffeine, fiber, and protein.  She can eat bread and baked potatoes.  She showers to avoid getting in and out of a bathtub, and she has trouble putting on her socks and shoes due to back spasms.  (Tr. 335.)  She goes grocery shopping, yet her son carries her purchases.  Her son cleans, does the dishes, takes out the garbage, vacuums, and does his laundry and Landreth's when she cannot do it herself. Landreth has trouble bending to get the laundry in and out of the washer and dryer.  (Tr. 336.) Landreth naps but not for six to eight hours daily as she once did.  She stated that in a month's time, she has about half "good" days and half "bad" days.  (Tr. 337.)  She described a "good" day as one during which she will feel well for up to three hours and then she is tired and weak and needs to rest. Landreth testified that she feels she cannot return to her previous jobs as a cashier, phlebotomist, or cook due to her inability to bend, lift and be on her feet.  (Tr. 338.)

Landreth testified that she has back pain daily, and she takes Tylenol-3 and Flexeril, the latter on an as-needed basis.  She also uses a TENS unit.  For her gastrointestinal problems she takes Zantac and Hyoscyamine.  (Tr. 339.)  She testified that she has been diagnosed with Hepatitis C.  (Tr. 340-41.)

***Vocational Expert's Testimony***

Sandra Trudeau,[4] a vocational expert ("VE") with the social security administration, testified assuming that Landreth: can occasionally lift up to ten pounds and frequently lift up to five pounds; can sit for six hours and assume another position two hours; can complete a normal workday with normal breaks; enjoys normal use of hands, arms and "so forth"; can occasionally stoop and crawl; cannot negotiate ladders, ropes or scaffolds; must avoid concentrated exposure to vibration, heights, and open machinery; and is able to alternate positions at least hourly.  (Tr. 342.)  Assuming those limitations, the VE opined that Landreth could perform her past relevant work as a cashier albeit in the light range of exertion, as well as the jobs of a sedentary interviewer and a general office clerk.  (Tr. 342-45.)  The VE testified that such positions exist in sufficient numbers in the national and local economies.   (Tr. 345.)

***Documentary Evidence Before the ALJ***

In November of 2002, Landreth went to the emergency room with complaints of hip pain. (Tr. 214-15.)  Pelvic and left hip x-rays were unremarkable.  (Tr. 219.)

On December 17, 2002, a gastroscopy with biopsies was performed.  (Tr. 210.)  Results were normal.  (Tr. 211.)  An abdominal ultrasound showed a surgically absent gallbladder without evidence of ductal dilatation.  The pancreas appeared normal.  Gas was present.  (Tr. 212.)

On January 7, 2003, Douglas States, M.D., noted that Landreth's endoscopy results looked normal.  (Tr. 177.)  He prescribed Zelnorm to help with dyspepsia.  (Tr. 177.)

---

[4]Ms. Trudeau's resume appears in the record.  (Tr. 53-54.)

Landreth saw Wendy Gosnell, M.D., on March 24, 2003, with multiple complaints. Other than some right upper quadrant abdominal tenderness to palpation and thoracic spurring, the examination was unremarkable.  Dr. Gosnell noted lab results on Mach 27, 2003, which showed that Hepatitis C was repeatedly reactive.  (Tr. 234.)

On April 16, 2003, Landreth saw John Goff, M.D., for evaluation of Hepatitis C.  Dr. Goff performed tests to determine, among other things, the extent of the hepatitis.  He diagnosed a urinary tract infection.  (Tr. 251.)

On May 5, 2003,Landreth again saw Dr. Gosnell and reported pain radiating from her low back into her left leg and some back spasms.  Otherwise, she was doing fairly well.  (Tr. 233.)  Dr. Gosnell noted sciatica, tenderness to palpation over the low back and positive straight leg raise on the left, and good deep tendon reflexes.  (Tr. 233.)

Landreth underwent a lumbar magnetic resonance imaging ("MRI") scan on May 20, 2003.  The results indicated no evidence of recurrent disc protrusion at L4-5.  There were small areas of epidural enhancement that "probably represent[ed] enhancing surgical scar" for which clinical correlation was needed.  There was a new "mild" posterolateral broad-based disc protrusion at L5-S1 toward the left with a "relatively mild" degree of narrowing.  (Tr. 197-98.)

Landreth saw Ramon R. Salumbides, M.D., on May 27, 2003, with complaints of low back pain for approximately two months.  Dr. Salumbides had treated Landreth in the past for her back complaints.  After examining Landreth and reviewing the recent MRI study, Dr. Salumbides noted only mild disc bulging at L5-S1 which did not impact on the theca sac or any nerve roots.  He opined that Landreth's symptoms resulted from"mild" degenerative disc disease and recommended conservative treatment, leaving open the option of an

7

epidural injection at a later time.  Dr. Salumbides found no significant disc herniation or stenosis.  (Tr. 228.)

A liver biopsy on May 28, 2003, revealed chronic hepatitis with minimal inflammatory activity (grade I).  There was moderate portal fibrosis, septal extension, and rare foci of bridging fibrosis (stage II).  (Tr. 248-49.)  In a letter to Landreth dated July 1, 2003, Dr. Goff stated that his nurse had been unable to reach Landreth to start her treatment for Hepatitis C and requested that she contact his office as she needed to start treatment.  (Tr. 246.)

On June 19, 2003, Landreth requested a TENS unit for her back pain.  (Tr. 232.) On follow-up on August 21, 2003,Landreth reported that she had been doing "really well." (Tr. 231.)  She further stated that Naprosyn seemed to control her back pain "fairly well" in conjunction with the TENS unit. Landreth told Dr. Gosnell that she would be starting Interferon injections for her Hepatitis C.  (Tr. 231.)

Landreth reported to Dr. Gosnell on October 4, 2003, that she had been feeling "very good" since starting her hepatitis treatment.  She stated that she continued to be achy at times.  Dr. Gosnell noted that Landreth was decreasing the amount of Vicodin she had been using, and was now taking Tylenol with codeine. Landreth stated that she would like to consider returning to work in the next month or two.  (Tr. 230.)

On October 29, 2003, Landreth told Dr. Gosnell that she was attempting to return to work, but that she needed a note for only part-time work due to her chronic fatigue from her Hepatitis C and the treatment for the disease.  On October 30, 2003, a liver panel and complete blood count were normal.  (Tr. 269.)

In a note dated November 4, 2003, Dr. Goff stated that it would benefit Landreth to work only twenty hours per week while starting her treatment for Hepatitis C.  (Tr. 236.)

8

Dr. Goff's office notes indicate that Landreth was left a telephone message on December 18, 2003. It was noted that Landreth was a "nonresponder" and because of this would no longer be prescribed medication for her Hepatitis C treatment. (Tr. 288.)

On January 14, 2004, Dr. Gosnell treated Landreth for complaints of heartburn and stomach irritation. On February 25, 2004, an upper gastrointestinal study showed some duodenitis. (Tr. 268.) On follow-up on March 15, 2004, Landreth reported more heartburn, reflux, and abdominal pain. She was prescribed medication for these complaints. (Tr. 17, 267.) On March 31, 2004, Landreth reported continuing diarrhea, especially after eating, but only occasional abdominal pain below her ribs. Dr. Gosnell diagnosed chronic diarrhea and a urinary tract infection. (Tr. 267.)

On June 29, 2004, Landreth saw Douglas E. Brouillette, M.D., for a consultative examination. (Tr. 292-93.) While Dr. Brouillette reported a diagnostic impression of Hepatitis C, he noted his doubt that the Hepatitis C was causing symptoms other than "some" fatigue. He further diagnosed a "suspect" irritable bowel syndrome with probable gastroesophageal reflux disease. (Tr. 292.)

### THE ALJ'S DECISION

The ALJ found that Landreth is not "disabled" pursuant to her applications for disability and SSI benefits. (Tr. 23.) The ALJ framed the issues as: (1) whether Landreth is entitled to disability and SSI benefits under the Act; and (2) whether Landreth is "disabled." (Tr. 13.)

The ALJ followed the sequential evaluation process set out in 20 C.F.R. §§ 404.1520 and 416.920[5] to determine whether Landreth is disabled, considering:

> any current work activity, the severity of any medically determinable impairment(s), and the individual's residual functional capacity with regard to . . . her ability to perform past relevant work or other work that exists in the regional and national economies. This latter step requires an assessment of the individual's age, education and past work experience.

(Tr. 14.)

Following this analysis, the ALJ found that Landreth is not disabled. (Tr. 23.) Specifically, at step one the ALJ found that Landreth has not performed any substantial gainful work activity since October 31, 2002. (Tr. 14.) At step two, the ALJ found that Landreth has three medically determinable impairments that are "severe" within the meaning of the SSA's regulations: digestive problems with question of irritable bowel syndrome; Hepatitis C; and status post back surgery in 1999. (Tr. 17.) At step three, the ALJ found that Landreth's medically determinable impairments, either singly or collectively, do not meet section 12.04 or any other section of Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4, known as the "listings." (Tr. 17-18.) The ALJ noted that Landreth did not contend that her impairments met the listings. (Tr. 18.) At step four, the ALJ determined that, despite Landreth's medically determinable impairments, she possesses the residual functional capacity to perform her past relevant work as a cashier (performed at the sedentary level). (Tr. 22.)

Finally, at step five the ALJ found: (1) Landreth has the residual functional capacity to perform other sedentary positions such as interviewer and administrative support worker;

---

[5]Section 404.1520 relates to disability benefits, and identical § 416.920 relates to SSI benefits. For simplicity, further references will only be to § 404.1520.

and (2) such jobs exist in significant numbers in Nebraska, Missouri, Kansas and the national economy.  (Tr. 22.)  In so deciding, the ALJ weighed Landreth's testimony, finding the testimony not credible insofar as Landreth testified that she is unable to work at any position on a sustained basis.  (Tr. 22.)  The ALJ also carefully considered: the medical records submitted by treating physicians Drs. Gosnell, Goff, and Salumbides (Tr. 15-17); and the opinion of a consultative physician, Dr. Brouillette (Tr. 17).

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo.  Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995).  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision.  *Harris,* 45 F.3d at 1193.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision.  *Id.*; *Morse v. Shalala,* 16 F.3d 865, 870 (8th Cir. 1994).  As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

11

## DISCUSSION

### "DISABILITY" DEFINED

An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The physical or mental impairment must be of such severity that the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). If the claimant argues that he has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B).

### SEQUENTIAL EVALUATION

In determining disability, the Act follows a sequential evaluation process.  *See* 20 C.F.R. § 416.920.  In engaging in the five-step process, the ALJ considers whether: 1) the claimant is gainfully employed; 2) the claimant has a severe impairment; 3) the impairment meets the criteria of the "listings"; 4) the impairment prevents the claimant from performing past relevant work; and 5) the impairment necessarily prevents the claimant from doing any other work.  *Id.*  If a claimant cannot meet the criteria at any step in the evaluation, the process ends and the determination is one of no disability.  *Id.*

12

In this case, the ALJ completed all five steps in the evaluation process, concluding: 1) Landreth has not performed substantial gainful work activity since October 31, 2002; 2) Landreth has three medically determinable impairments that are "severe" within the meaning of the SSA's regulations, digestive problems with question of irritable bowel syndrome; Hepatitis C; and status post back surgery in 1999; 3) Landreth's medically determinable impairments, either singly or collectively, do not meet the "listings"; 4) despite Landreth's medically determinable impairments, she possessed the residual functional capacity to perform her past relevant work as a cashier, performed at a sedentary level; and 5) Landreth has the residual functional capacity to perform other sedentary positions such as interviewer and administrative support worker, jobs that exist in significant numbers in Nebraska, Missouri and Kansas, and the national economy.

## PAIN ANALYSIS

### *Credibility of Landreth's Testimony*

Landreth argues that the ALJ did not properly apply the correct standard in evaluating Landreth's subjective complaints of pain. Landreth argues that the ALJ found her testimony not credible, and that this finding led to an improper hypothetical posed to the VE.  The Court notes that the ALJ found Landreth's testimony not credible only with respect to "the extent of her symptoms and limitations."  (Tr. 21.)

The ALJ found that Landreth's testimony was not credible in light of the criteria set forth in 20 C.F.R. §§ 404.1529 and 416.929, Social Security Ruling 96-7p, and *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984).  (Tr. 21, 23.)  Specifically, the ALJ found: Landreth has not mentioned many of her claimed limitations to her doctors; her treating physicians

13

did not prohibit her from working; Landreth has been inconsistent with respect to her reported limitations; Landreth's reported activities are inconsistent with her allegations of total disability; and Landreth has had a good work history.  (Tr. 21-22.)

The credibility of Landreth's testimony in its entirety is crucial because, in determining the fourth and fifth factors relating to her residual functional capacity to perform past relevant work and a range of work activities in spite of her impairments, the ALJ must evaluate the credibility of her testimony regarding subjective pain complaints. The underlying issue is the severity of the pain.  *Black v. Apfel,* 143 F.3d 383, 386-87 (8th Cir. 1998). The ALJ is allowed to determine the "authenticity of a claimant's subjective pain complaints."  *Ramirez v. Barnhart,* 292 F.3d 576, 582 (8th Cir. 2002) (citing *Troupe v. Barnhart,* 32 Fed. Appx. 783, 784 (8th Cir. 2002); *Clark v. Shalala,* 28 F.3d 828, 830-31 (8th Cir. 1994)).  An "'ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.'"  *Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001) (stating the issue as whether the record as a whole reflected inconsistencies that discredited the plaintiff's complaints of pain) (quoting *Gray v. Apfel,* 192 F.3d 799, 803 (8th Cir.1999)).

Also, an ALJ may resolve conflicts among various treating and examining physicians, assigning weight to the opinions as appropriate.  *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001).

The *Polaski* standard is the guide for credibility determinations:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The

14

adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986).

Interpreting the *Polaski* standard, §§ 404.1529 and 416.929 discuss the framework for determining the credibility of subjective complaints, e.g., pain.

An ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints.  *Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).  This duty is fulfilled when an ALJ acknowledges the *Polaski* factors, and the ALJ has clearly examined the factors before discounting the claimant's testimony.  An ALJ is "not required to discuss methodically each *Polaski* consideration."  *Id.* at 972.

The federal regulations provide that the ALJ must consider all symptoms, "including pain, and the extent to which symptoms can reasonably be accepted as consistent with the

objective medical evidence," defined as "medical signs and laboratory findings." 20 C.F.R.

§ 416.929.  Medical "signs" are defined as:

> anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. § 416.928(b).

> "Laboratory findings" are defined as: "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests."

20 C.F.R. § 416.928(c).

Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record.  Ruling 96-7p provides that the ALJ must consider such factors as:

> * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.

> * The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e). However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen

16

or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

* The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *5 (July 2, 1996). [6]

Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony and, in particular, subjective complaints of pain. *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, although every factor may not have been discussed).

In AL's case, the record illustrates that the ALJ performed a thorough *Polaski* analysis in determining the credibility of Bartlett's subjective pain complaints.   In making the credibility determination, the ALJ considered that Landreth has not performed substantial gainful activity since October 31, 2002, has not reported numerous alleged limitations to her physicians, undertakes many church activities including cleaning the church between two and three hours weekly, home schools her son, and has had a "good" work history.  (Tr. 22.)

---

[6]Social Security Ruling 96-7p is entitled: "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.

17

The ALJ considered Landreth's hobbies and activities. (Tr. 22.) The ALJ also noted Landreth's testimony that she cannot: be on her feet long enough to cook a meal; bend, stoop, squat; put on her socks and shoes; get in and out of a tub; and reach or grip. (Tr. 21.) *See Pena v. Chater,* 76 F.3d 906, 908 (8th Cir.1996) (affirming the ALJ's discount of claimant's subjective complaints of pain, where the plaintiff cared for one of his children on a daily basis, drove a car infrequently, and occasionally went grocery shopping).

The ALJ exhaustively considered the medical opinions of treating physicians Drs. Gosnell, Goff, and Salumbides. (Tr. 18-21.) The ALJ also considered the opinion of the consultative physician, Dr. Brouillette. (Tr. 17.) The ALJ specifically noted discrepancies between Landreth's hearing testimony and her March 4, 2004, interrogatories completed only four months prior to the hearing as to the following limitations: the amount of weight she can lift; the existence of back pain; and her ability to stand, walk and sit. (Tr. 21-22.)

In summary, the ALJ thoroughly considered all of the evidence including: Landreth's subjective pain complaints as reflected in her interrogatories and her hearing testimony; the reports of her treating physicians; and the report of the agency physician. The ALJ correctly performed the *Polaski* analysis. The ALJ set out the standards stated in §§ 404.1529 and 416.929, and the ALJ acknowledged the *Polaski* standard as well as applicable regulations and SSR 96-7p. (Tr. 18-19.) The ALJ's conclusion that Landreth's pain is not severe enough to prevent her from engaging in her past relevant work as a cashier, performed on a sedentary basis, was well-founded, and followed an appropriate express credibility determination regarding Landreth's assertion of subjective complaints. The ALJ's credibility decision was well-supported and based on a thorough analysis of

18

treating and consultative medical reports, as well as Landreth's own statements reflected in her answers to interrogatories and the hearing testimony.

Therefore, the ALJ appropriately determined that Landreth's testimony was not credible with respect to the extent of her symptoms and limitations.

### Past Relevant Work

The ALJ bears the primary responsibility for assessing Landreth's residual functional capacity based on the relevant evidence. However, Landreth's residual functional capacity is a medical question. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir. 2001). The ALJ must resolve any conflict in the medical evidence. *Id.* However, some medical evidence "'must support the determination of the claimant's [residual functional capacity], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Id. at 712 (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). "To properly determine a claimant's residual functional capacity, an ALJ is therefore 'required to consider at least some supporting evidence from a [medical] professional.'" *Id.* (quoting *Lauer,* 245 F.3d at 704).

In Landreth's case, the ALJ followed the procedures in determining that Landreth retained the residual functional capacity to return to some of her past relevant work. The ALJ considered, among other things, records from both treating and agency physicians. Taking all of this evidence as well as additional relevant evidence into consideration, the Court finds that the ALJ properly determined the fourth and fifth steps of the inquiry.

Specifically, Landreth argues that the ALJ failed to take into account her obesity[7] in determining her residual functional capacity.   However, Landreth never raised her obesity as an issue relating to her alleged disability in the application process for disability or SSI benefits, in completing her interrogatories, or during the hearing.   Moreover, none of her treating physicians addressed obesity as a factor relating to her complaints.   The consultative physician also did not address the issue.   Therefore, because Landreth did not include her obesity as a basis for her alleged disability, the ALJ is not obliged to address the issue.   *Mousseau v. Barnhart,* 119 Fed. Appx. 18, at **1 (8th Cir. 2004); *Gregg v. Barnhart,* 354 F.3d 710, 712-13 (8th Cir. 2003); SSR 02-01p, 2000 WL 628049 (S.S.A.) at *7 (Sept. 12, 2002).

Therefore, this Court agrees that the ALJ properly determined that Landreth can return to her past relevant work as a cashier at a sedentary level.

### *Residual Functional Capacity*

Residual functional capacity ("RFC") is defined as what Landreth "can still do despite . . . limitations."   20 C.F.R. §§ 404.1545(a), 416.945(a).   Residual functional capacity is an assessment based on all "relevant evidence," *id.*, including a claimant's description of limitations; observations by treating or examining physicians or psychologists, family, and friends; medical records; and the claimant's own description of her limitations.   *Id.* §§ 404.1545(a)-(c), 416.945(a)-(c).

The ALJ must determine RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and the claimant's own

---

[7]At the time of the hearing, Landreth testified that she was 5'6" tall and weighed 156 pounds.  (Tr. 320.)

20

description of her limitations. *McKinney v. Apfel,* 228 F.3d 860, 863-64 (8th Cir. 2000).

Before determining residual functional capacity, an ALJ first must evaluate the claimant's

credibility. In evaluating subjective complaints, the ALJ must consider, in addition to

objective medical evidence, any other evidence relating to: a claimant's daily activities;

duration, frequency and intensity of pain; dosage and effectiveness of medication;

precipitating and aggravating factors; and functional restrictions. *See Polaski,* 739 F.2d

at 1322; *see also* § 404.1529. Subjective complaints may be discounted if there are

inconsistencies in the evidence as a whole. *Polaski,* 739 F.2d at 1322. A lack of work

history may indicate a lack of motivation to work rather than a lack of ability. *See Woolf v.

Shalala,* 3 F.3d 1210, 1214 (8th Cir.1993) (stating that a claimant's credibility is diminished

by a poor work history). The credibility of a claimant's subjective testimony is primarily for

the ALJ, not a reviewing court, to decide. *Pearsall,* 274 F.3d at 1218.

In this case, the ALJ set out the language describing the appropriate standard under

*Polaski* and § 404.1529. The ALJ summarized Landreth testimony and described her daily

activities according to the testimony and documentary evidence. The ALJ found Landreth's

testimony not credible with respect to the extent of her symptoms and limitations. The ALJ

specifically considered, in addition to Landreth's testimony, documentary evidence

including Landreth's answers to interrogatories, reports of treating and consultative

physicians, residual functional capacity assessments, and the testimony of a vocational

expert. The VE opined that Landreth has the residual functional capacity to perform her

past relevant work as a cashier on a sedentary level as well as other sedentary jobs such

as an interviewer and clerk, and that these jobs exist in significant numbers in Nebraska, Missouri and Kansas, as well as in the national economy.

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

IT IS ORDERED that the decision of the Commissioner is affirmed, the appeal is denied, and judgment in favor of the Defendant will be entered in a separate document.

DATED this 26th day of September, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

22